**Steve Mark BROWN, Relator,**

v.

**ARROWHEAD TREE SERVICE, INC., et al., Respondents.**

**No. C9–82–972.**

Supreme Court of Minnesota.

April 15, 1983.

Falsani, Balmer & Berglund and Robert C. Falsani, Duluth, for relator.

Arnold W. Larson, Duluth, for respondents.

KELLEY, Justice.

By writ of certiorari, Steve Mark Brown, relator-employee, seeks review of a Workers' Compensation Court of Appeals decision denying him recovery for injuries sustained by him when he fell from a tree. The court of appeals found that relator's injuries arose outside the scope of his employment because the act giving rise to the injuries had been expressly prohibited by the employer. We affirm.

On May 7, 1980, the employee was the foreman of a brushing crew for Arrowhead Tree Service, Inc. (Arrowhead). Arrowhead was clearing brush and trees on a powerline right-of-way for its customer, Two Harbors Power & Light Company. Arrowhead's clearance work included removal of dead "danger" trees. Danger trees are trees that are close to powerlines and pose a hazard. The brushing crew often included an employee trained in climbing and topping of large trees, but on this date the crew did not have a trained climber.

Before going to work on May 7, 1980, employee stopped at the office of George Lancour and LeRoy Herrick, both general foremen for Arrowhead. He told them about an unusually large "danger" tree, a dead pine more than 90 feet tall, which had to be removed from the right-of-way. Both general foremen told employee to leave the tree alone, and Lancour said that he would send a climber or topper there in a day or two to remove the tree. After receiving these instructions, employee and his crew drove to the power company's plant at Two Harbors. There employee talked briefly with the power company's line superintendent, during which conversation he told the superintendent about the danger tree. Though employee had not indicated to his general foreman that the tree had to be removed immediately, according to the employee the line superintendent told him he would send a crew out later to help employee.

At the worksite, the brushing crew left the "danger" tree alone and proceeded to clear brush for approximately 300 feet along the powerline behind it. In the past, when a trained climber and topper was not present with the brushing crew, the employee would climb smaller trees, cut branches and throw ropes around about the trees. He had also, on occasion when no trained climber was present, topped smaller trees. Topping is a procedure whereby the worker climbs the tree and saws off sections beginning at the top of the tree.

About 2:30 p.m. on May 7, 1980, four power company employees drove up to the worksite. None of the power company men would climb the tree. Employee testified that one of the power company crew asked him to do so. Ron Ostendorf, the power company's crew foreman, denied that anyone from the power company asked employee to top the tree. Employee never indicated to Ostendorf that he was unqualified to climb the tree. He further stated that it would have been acceptable to the power company if employee had advised him that a trained climber would top the tree in a day or so.

Employee, after borrowing some spurs and a climbing belt from the power compa-

ny crew, began to ascend the tree. Sometime afterwards, employee decided he had insufficient strength to do the job and commenced descending. During the course of descent, he fell about 20 feet to the ground and sustained a back injury. Employee said that he undertook the job of climbing the tree because he had had a little experience in topping and thought he could do the work. He also testified he thought it was in the best interests of Arrowhead that he do so.

The compensation judge found that employee was performing an act specifically prohibited by the employer when he was injured, that the employee's performance of the act was not reasonably foreseeable by the employer, and that employee's injury sustained during the act accordingly did not arise out of his employment. On appeal, the Workers' Compensation Court of Appeals, with one judge dissenting, affirmed that determination.

Employee argues that his injury arose out of and in the course of his employment because, essentially, he was doing an authorized act in an unauthorized manner. He likewise claims he was attempting to cooperate with and satisfy his employer's customer by trying to remove the tree after the power company's employees came to the worksite to help him do so. He claims that as foreman he had to exercise judgment about whether to climb the tree contrary to the express orders that he had received a few hours earlier. He claims he thought he was acting in furtherance of his employer's interests. In essence, employee Brown is claiming that his violation of his supervisor's prohibition only related to the manner of performing his work duties and, therefore, did not take him out of the scope of his employment. *Prentice v. Twin City Wholesale Grocery*, 202 Minn. 455, 278 N.W. 895 (1938); *Olson v. Robinson Straus & Co.*, 168 Minn. 114, 210 N.W. 64 (1926).

We cannot concur with employee's contention that at the time of his injury he was performing an authorized act in an unauthorized manner. Employee was not only not authorized to top the tree, but he was specifically prohibited by his superior from doing so. Only hours before the event, Brown had specific instructions not to do anything to that particular tree. Brown was informed by the general foreman that Arrowhead had available trained and qualified tree climbers who would remove the tree in a day or so. A slight delay in removing the tree was a matter of no consequence to either the employer or to the customer. Notwithstanding employee's stated subjective intention of furthering his employer's business, by proceeding to top the tree contrary to express instructions from his superior that he or his brushing crew was to do nothing to the "danger" tree, we hold he removed himself from the scope of his employment when, contrary to those instructions, he attempted to do the prohibited work.

In *Walsh v. Chas. Olson & Sons, Inc.*, 285 Minn. 260, 172 N.W.2d 745 (1969), we rejected a test of whether a work-related injury had a tendency to serve the employer's business for one determining whether the injury resulted from conduct involving a risk or hazard of the work environment reasonably to be apprehended by the employer. When an employer specifically instructs an employee not to undertake a dangerous task for which the employee is unqualified, we find it hard to say that Brown's injury could reasonably have been anticipated by the employer under the circumstances here existing. In *Bartley v. C–H Riding Stables, Inc.*, 296 Minn. 115, 206 N.W.2d 660 (1973), we again emphasized that where it is not reasonably foreseeable by an employer that an expressly prohibited act will occur, the violation of such prohibition takes the employee outside the scope of the employment. Accordingly, we affirm the Workers' Compensation Court of Appeals.

Affirmed.

YETKA, Justice (dissenting).

The employee here was clearly acting in direct furtherance of his employer's interests and business, utilizing judgment as a foreman in dealing directly with a customer. I would find that the employer's di-

rective was considerably less specific than in previous decisions of this court. Its disregard was not so unforeseeable as to justify holding that the employee removed himself from the scope of his employment.

Brown was instructed on the morning of the accident that he was to leave the tree alone. Reference was made to a climbing crew that would be sent to the site in the future to remove the tree. After this directive and prior to going to the job site, however, Brown spoke about the tree with a superintendent of the customer power company. He was told that the customer would send out a crew to assist him. When the crew arrived at the job site several hours later, Brown felt that the power line crew wanted the tree down right away. The evidence does not reveal what was said at this time, only supplying impressions of the various workers' attitudes towards what was to be done.

Brown testified that, as part of his job, he felt he should attempt to remove the tree. Moreover, in Brown's view, an element of urgency was presented when a power company crew came to the job site to assist in removing the tree.

Brown's action was reasonably foreseeable and the employer was not placed in the untenable position of having no reasonable means of prevention, as were the employers in other cases cited in the majority opinion. Here, Brown was the foreman of the brushing crew, a position involving judgmental decisions and independent action. Further, Brown had been a foreman for only 2–3 weeks prior to the action. The employer could anticipate that Brown would be eager to perform to the best of his abilities, please the customer, and show his employer that he was willing and able to assume responsibility. The employer knew that foremen frequently stopped at the customer's place of business to discuss the day's work and receive any special or additional instructions. It was in response to just such a meeting that the power company crew was sent out to assist Brown in removing the tree. Finally, the employer knew that brushers occasionally climbed small trees to rope them in preparation for removal. Brown's act may have been beyond normal practice but, if so, only in degree, not character. *See Prentice v. Twin City Wholesale Grocery,* 202 Minn. 455, 278 N.W. 895 (1938).

I would not say that the employee here violated an express prohibition to engage in a specific act by undertaking to remove the tree in response to the desire of the customer. Employee was directly furthering the employer's business interests and disregard of the employer's instruction was reasonably foreseeable.

I would hold that the employee here was acting within the sphere of his employment and that his injury arose out of and in the course of his employment.

TODD, Justice (dissenting).

I join in the dissent of Justice Yetka.

SCOTT, Justice (dissenting).

I join in the dissent of Justice Yetka.

WAHL, Justice (dissenting).

I join the dissent of Justice Yetka.